UNITED STATES of America, Plaintiff–Appellee,

v.

John Henry YOUNG, Defendant–Appellant.

No. 90–30257.

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 1991.*

Decided June 13, 1991.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John Henry Young, in pro. per.

Carl E. Rostad, Asst. U.S. Atty., Great Falls, Mont., for plaintiff-appellee.

Before WRIGHT and O'SCANNLAIN, Circuit Judges, and GEORGE,** District Judge.

PER CURIAM:

Following his conviction and sentencing for assaulting a federal officer and related charges, John Henry Young filed, *pro se*, a motion to correct an illegal sentence. The district court denied the motion, as well as Young's subsequent motion to reconsider. We affirm.

I

On March 23, 1988, Young and his cousin, James Snell, were shooting gophers on the Fort Belknap Indian Reservation in Montana. Two Bureau of Indian Affairs police officers stopped Snell's automobile

** The Honorable Lloyd D. George, United States District Judge for the District of Nevada, sitting by designation.

for running a stop sign. One of the officers, Sergeant Myron Oats, recognized Young as the subject of two outstanding tribal warrants. When Oats attempted to arrest Young, a struggle ensued over possession of Young's rifle. Young, however, was eventually subdued.

Young was indicted for assaulting a federal officer, in violation of 18 U.S.C. § 111, possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and use of a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). The jury convicted Young on all three counts. The district court sentenced Young to ten years' imprisonment on the first count, the maximum sentence possible when an assault on a federal officer involves a deadly or dangerous weapon. On the second count, the district court imposed a concurrent ten year sentence, and on the third count, a mandatory five-year consecutive term was imposed. On direct appeal, Young's convictions and sentence were affirmed. *See United States v. Young*, 883 F.2d 1025 (9th Cir.1989) (unpublished disposition).

## II

We first consider, *nostra sponte*, whether the district court had jurisdiction to entertain Young's numerous post-conviction claims. Jordan styled his *pro se* motion as a "motion to correct an illegal sentence" under Federal Rule of Criminal Procedure 35(a). The district court considered and rejected all of Young's claims on the merits, without considering whether these claims were properly brought in a Rule 35 motion. Rule 35 was substantially amended by the Sentencing Reform Act of 1984 and, as part of these amendments, the ability of a defendant to seek sentence correction was curbed. "Although Rule 35(a) at one time provided that '[t]he court may correct an illegal sentence at any time and

may correct a sentence imposed in an illegal manner within the time provided herein for the reduction of sentence,' that version of Rule 35(a) is not applicable to individuals sentenced under the Sentencing Reform Act of 1984." *United States v. Jordan*, 915 F.2d 622, 624 (11th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1629, 113 L.Ed.2d 725 (1991). As amended, Rule 35 is no longer available to ground the relief that Young seeks.

However, Young's unfortunate mislabelling of his motion is not necessarily fatal to maintaining his claims. The pleadings of a *pro se* inmate are to be liberally construed. *See United States v. Eatinger*, 902 F.2d 1383, 1385 (9th Cir.1990); *see also United States v. Ten Thousand Dollars in United States Currency*, 860 F.2d 1511, 1513 (9th Cir.1988). A court may treat a Rule 35 motion as one brought under 28 U.S.C. § 2255. *See Eatinger*, 902 F.2d at 1385 (reversing district court's ruling on Rule 35 motion on the ground that the district court should have "liberally construe[d]" the motion as a petition filed under section 2255); *United States v. Fowler*, 794 F.2d 1446, 1448 (9th Cir.1986) (court avoided question of whether claims cognizable under section 2255 by treating petition as a motion under Rule 35), *cert. denied*, 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 153 (1987); *accord Jordan*, 915 F.2d at 625 ("federal courts have recognized that claims presented under the previous version of Rule 35(a) are also frequently cognizable under 28 U.S.C. § 2255 as well"). Accordingly, we shall treat Young's Rule 35(a) motion as one arising under section 2255.[1]

## III

Young contends that the district court erred in sentencing him under the deadly or dangerous weapon provision of 18 U.S.C. § 111 when the indictment failed to allege the elements of this provision.[2] Section

---

**1.** In *Eatinger*, we held that the district court had erred by failing to treat a *pro se* inmate's Rule 35(b) motion as one arising under section 2255, and accordingly, we remanded so that the court could evaluate the motion as a petition filed under section 2255. *Eatinger*, 902 F.2d at 1385. Here, however, a remand would be pointless

because, unlike *Eatinger*, the district court rejected Young's claims on the merits.

**2.** Young did not raise this issue in his Rule 35 motion before the district court, which would normally preclude review by this court. However, under Federal Rule of Criminal Procedure

111, as it read at the time of Young's criminal conduct, provided:

> Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

> Whoever, in the commission of such acts uses a deadly or dangerous weapon, shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

18 U.S.C. § 111.[3]  Young was sentenced under the latter part of this statute. However, the relevant count of Young's indictment did not allege the use of a deadly or dangerous weapon, either specifically or generically.[4]

■ "An indictment is required to set forth the elements of the offense sought to be charged." *United States v. Debrow*, 346 U.S. 374, 376, 74 S.Ct. 113, 114, 98 L.Ed. 92 (1953); *see also United States v. Krasovich*, 819 F.2d 253, 255 (9th Cir.1987) (same).  Here, there is no dispute that the indictment did not allege the use of a deadly or dangerous weapon.  Rather, the question is whether the use of such a weapon is an essential element of the crime, or whether it is simply a "sentence enhancement" which need not be pled in the charging indictment.

The Supreme Court's latest statement on this issue is found in *McMillan v. Pennsyl-* *vania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986).  In *McMillan*, the Court considered a constitutional challenge to Pennsylvania's Mandatory Minimum Sentencing Act.  Under the Act, anyone convicted of certain enumerated felonies was subject to a mandatory minimum sentence of five years' imprisonment if the sentencing judge found, by a preponderance of the evidence, that the person "visibly possessed a firearm" during the commission of the offense.  McMillan contended that the "visible possession of a firearm" must be pled in the indictment, submitted to the jury, and proven beyond a reasonable doubt, just as any offense (or elements of an offense) must be.

■ The Supreme Court disagreed. "[I]n determining what facts must be proved beyond a reasonable doubt the state legislature's definition of the elements of the offense is usually dispositive." *Id.* at 85, 106 S.Ct. at 2415.  Generally, facts which bear only on sentencing need not be proven beyond a reasonable doubt. *Id.* at 85–86, 106 S.Ct. at 2415–2416.  However, the Court observed that "there are constitutional limits to the State's power in this regard; in certain limited circumstances *Winship*'s reasonable-doubt requirement applies to facts not formally identified as elements of the offense charged." *Id.* at 86, 106 S.Ct. at 2416.  The Court did not attempt to define the precise contour of the constitutional threshold; rather, it identified several factors that persuaded it that

52(b), this court may consider contentions which are "plain errors or defects affecting substantial rights." *See United States v. Eastman*, 758 F.2d 1315, 1318 (9th Cir.1985) (invoking Rule 52(b) in an appeal from the denial of a Rule 35 motion).  Presumably, if Young's indictment was fatally flawed, such an error could be considered by this court in the first instance.

**3.** Section 111 was amended on November 18, 1988 to read:

(a) In general.—Whoever—

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designat-

ed in section 1114 on account of the performance of official duties during such person's term of service,

shall be fined under this title or imprisoned not more than three years, or both.

(b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon, shall be fined under this title or imprisoned not more than ten years, or both.

**4.** In addition, it appears that the jury was not instructed regarding the use of a deadly or dangerous weapon.  While the district court's actual instructions were not transcribed, and accordingly are not part of the record, the government's proposed jury instructions on the assault charge did not contain any language regarding the use of a weapon.

the constitutional limits had not been exceeded by the Pennsylvania legislature. First, the Court noted that the Act did not contain any impermissible presumptions. *Id.* at 87, 106 S.Ct. at 2416–17. Second, the Court observed that the Act "neither alters the maximum penalty for the crime committed nor creates a separate offense calling for a separate penalty." *Id.* at 87–88, 106 S.Ct. at 2416–2417. Finally, the Court concluded that there was no evidence to suggest that the Pennsylvania legislature drafted the Act as it did with the intent of evading the "reasonable doubt" requirement. *Id.* at 89–90, 106 S.Ct. at 2417–2418.

Accordingly, our task is twofold; first, we must determine whether Congress intended the "deadly or dangerous weapon" provision of section 111 to be a separate offense. If the answer to this query is negative, we must determine whether we are constitutionally compelled to read that provision as a separate offense, regardless of Congress' intent.

■ When determining the breadth of a statute, a court must look first to the statute's language and structure. *See Moskal v. United States,* —— U.S. ——, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990); *see also United States v. 594,464 Pounds of Salmon,* 871 F.2d 824, 825 (9th Cir.1989). If the statute is unambiguous, its plain language controls except for in rare and exceptional circumstances. *See 594,464 Pounds of Salmon,* 871 F.2d at 826; *see also Howe v. Smith,* 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981).

The language and structure of section 111 suggest that the "deadly or dangerous weapon" clause is strictly a sentencing provision. Notably, the provision is not structurally separated from the rest of the section, indicating that the section contains only one substantive offense. Moreover, the deadly or dangerous weapon provision is not drafted as a stand-alone offense; it incorporates the predicate acts by reference rather than affirmatively setting forth any specific elements. Finally, the 1988 amendment reinforces the conclusion that the provision concerns only sentencing. Without otherwise materially altering the

provision, Congress subsequently labeled the provision "Enhanced Penalty." While the view of a later Congress does not establish definitely the meaning of an earlier enactment, it does have persuasive value. *Bell v. New Jersey,* 461 U.S. 773, 784, 103 S.Ct. 2187, 2194, 76 L.Ed.2d 312 (1983).

Having concluded that the dangerous or deadly weapon provision of section 111 was intended solely as a sentence enhancement rather than as a substantive offense, we next consider whether this reading of the statute is constitutional. As previously noted, in *McMillan* the Supreme Court observed that "in certain limited circumstances ... facts not formally identified as elements of the offense charged" must nonetheless be treated as "elements" to satisfy the Constitution. We most recently considered this aspect of *McMillan* in *Nichols v. McCormick,* 929 F.2d 507 (9th Cir.1991). There, the petitioner, Dan Nichols, maintained that his due process and sixth amendment rights were violated when he was sentenced under Montana's weapons enhancement statute where, as here, his use of a weapon was not considered an "element" of an offense. Under Montana's statute, any person "found guilty of any offense" while using a firearm during the commission of the offense "shall, in addition to the punishment provided for the commission of such offense, be sentenced to a term of imprisonment of ... not less than 2 years or more than 10 years." Mont.Code Ann. § 46–18–221. Nichols contended that under the sixth amendment, as construed in *McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), a sentence cannot exceed the penalty permitted by the underlying offense unless the sentencing factors are treated as "elements" of the offense.

We rejected that argument as a "narrow reading of *McMillan." Nichols,* 929 F.2d at 510 (footnote omitted). The Supreme Court, this court observed, "has consistently rejected any bright line test such as that Nichols proposes." *Id.* at 510. After balancing factors such as the intent of the legislature—giving due deference to the state legislature's determinations—we con-

cluded that the Montana weapon enhancement statute did not create a separate substantive offense. *Id.* at 510–11.

Applying *Nichols* to the present case, we conclude that the sentence enhancement provision of section 111 is not imbued with the constitutional accoutrements of an offense. Since *McMillan* did not establish a "bright line" rule, it is not particularly relevant that the sentence for using a dangerous or deadly weapon could exceed the "normal" statutory maximum by up to seven years; under the Montana statute considered in *Nichols*, the sentence could exceed the non-enhanced statutory maximum by up to ten years. In addition, the provision—like the Act construed in *McMillan*—does not contain any questionable presumptions. *See McMillan*, 477 U.S. at 86–87, 106 S.Ct. at 2416–2417. Finally, the use of a weapon during the commission of an offense is a factor that is traditionally—and properly—considered at sentencing phase of a criminal proceeding. *See id.* at 89–90, 106 S.Ct. at 2417–2418 ("[the Pennsylvania Legislature] simply took one factor that has always been considered by sentencing courts to bear on punishment—the instrumentality used in committing a violent felony—and dictated the precise weight to be given that factor if the instrumentality is a firearm").

## IV

Young predicates several of his contentions on the theory that federal courts have jurisdiction over his criminal case only by way of the Major Crimes Act, 18 U.S.C. § 1153. Young reasons that since the prerequisites for Major Crimes Act jurisdiction have not been satisfied, his convictions must be reversed.

**5.** This conclusion effectively disposes of Young's first, fourth, fifth, sixth, and seventh contentions on appeal.

**6.** Section 1501 provides in full that:
   Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States commissioner; or

■ As a general rule, tribal courts retain exclusive jurisdiction over all crimes committed by Native Americans against other Native Americans in Indian country. *See United States v. Johnson*, 637 F.2d 1224, 1231 (9th Cir.1980). However, there are exceptions. First, federal courts have concurrent jurisdiction over the offenses listed in the Major Crimes Act. *See id.; see also* 18 U.S.C. § 1153. In addition, federal courts continue to retain jurisdiction over violations of federal laws of general, non-territorial applicability. *See Johnson*, 637 F.2d at 1231 n. 9; *see also United States v. Top Sky*, 547 F.2d 483, 484 (9th Cir.1976); *United States v. Burns*, 529 F.2d 114, 117 (9th Cir.1976); *Walks On Top v. United States*, 372 F.2d 422, 425 (9th Cir.), *cert. denied*, 389 U.S. 879, 88 S.Ct. 109, 19 L.Ed.2d 170 (1967).

■ It is this latter exception which is implicated here. Each of the three offenses of which Young was convicted were violations of federal laws of general applicability. *See* 18 U.S.C. § 111 (federal jurisdiction predicated on federal officer status of victim, not on Indian country boundaries); 18 U.S.C. § 922(g) (federal jurisdiction predicated upon interstate transportation or shipment of firearm); 18 U.S.C. § 924(c) (federal jurisdiction predicated upon conviction of any other federal offense). Accordingly, the Major Crimes Act is in no way impugned by the charges lodged against Young.[5]

## V

■ Young maintains that the district court erred in failing to instruct the jury that it could convict Young of the lesser included offense of assault upon a process server, as set forth in 18 U.S.C. § 1501.[6]

   Whoever assaults, beats, or wounds any officer or other person duly authorized knowing him to be such officer, or other person so duly authorized, in serving or executing any such writ, rule, order process, warrant, or other legal or judicial writ or process—
   Shall, except as otherwise provided by law, be fined not more than $300 or imprisoned not more than one year, or both.

On direct appeal, the district court's failure to so instruct would be reviewed for plain error since Young did not request such an instruction. *See United States v. Skinna,* 915 F.2d 1250, 1253 (9th Cir.1990), *amended on other grounds,* 931 F.2d 530 (9th Cir.1991). On collateral review, the standard of review is even more stringent. *See Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977); *Lincoln v. Sunn,* 807 F.2d 805, 814 n. 6 (9th Cir.1987).

Young relies upon *United States v. Giampino,* 680 F.2d 898 (2d Cir.1982), in which the Second Circuit concluded that, under the facts of the case before it, 18 U.S.C. § 1501 was a lesser included offense of 18 U.S.C. § 111. The two offenses, the court observed, shared common elements except for one: section 111 required a showing of force, whereas the first paragraph of section 1501 did not. Since a reasonable jury could conclude that the defendant in *Giampino* did not use force, the court found that the district court's failure to instruct the jury on section 1501, the lesser included offense, was error.

Here, no such error occurred. A district court's failure to instruct on a lesser included offense is not error where a reasonable jury could not have found the defendant guilty of the lesser offense. *See United States v. Sanchez,* 914 F.2d 1355, 1361 (9th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1626, 113 L.Ed.2d 723 (1991); *Johnson,* 637 F.2d at 1233–34. There is no basis in the record to support a finding that Young "obstruct[ed], resist[ed], or oppose[d]" a federal officer *without* the use of force. *See* 18 U.S.C. § 1501. Rather, it is apparent that Young physically struggled with the officer, intending to shoot him. Thus, the district court's failure to instruct the jury on the lesser included offense was not error.

## VI

Young argues that his convictions under both section 922(g) and 924(c) violates the double jeopardy and due process clauses of the Constitution. "Where a legislature specifically authorizes cumulative punishments under two statutes, regardless of whether those two statutes proscribe the same conduct, the trial court may impose cumulative punishment in a single trial." *United States v. Springfield,* 829 F.2d 860, 865 (9th Cir.1987) (quotation omitted); *see also Whalen v. United States,* 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) ("The Double Jeopardy Clause ... precludes federal courts from imposing consecutive sentences *unless authorized by Congress to do so.*" (emphasis added). Section 924(c) expressly provides that its penalty shall be applied even where the underlying offense contains "an enhanced punishment if committed by the use of a deadly or dangerous weapon." The imposition of a cumulative punishment under 18 U.S.C. § 922(g) and 18 U.S.C. § 924(c) is not barred by either the double jeopardy or due process clauses of the fifth amendment. *See Springfield,* 829 F.2d at 865.

## VII

Finally, Young asserts that he was prejudiced by a clerical error in the government's opposition to his motion and in the district court's order denying the motion. This argument is patently frivolous and must be rejected.

AFFIRMED.